**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**



_____ X

JAMES KENNEY, Derivatively on Behalf of
CITIGROUP INC.,

                      Plaintiff,

    v.

VIKRAM S. PANDIT, JOHN C.
GERSPACH, JOHN P. HAVENS, MANUEL
MEDINA-MORA, BRIAN LEACH,
MICHAEL E. O'NEILL, JUDITH RODIN,
ROBERT L. RYAN, LAWRENCE
RICCIARDI, ANTHONY M.
SANTOMERO, WILLIAM S. THOMPSON,
JR., ROBERT L. JOSS, DIANA L.
TAYLOR, ERNESTO ZEDILLO PONCE
DE LEON, RICHARD D. PARSONS,
ALAIN J.P. BELDA, and TIMOTHY C.
COLLINS,

                    Defendants,

   -and-

CITIGROUP INC., a Delaware corporation,

           Nominal Defendant.

_____ X

Case No.

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT FOR
VIOLATIONS OF THE SECURITIES
AND EXCHANGE ACT OF 1934,
BREACH OF FIDUCIARY DUTIES,
AND UNJUST ENRICHMENT

DEMAND FOR JURY TRIAL

## NATURE AND SUMMARY OF THE ACTION

1.      This is a shareholder derivative action brought by plaintiff on behalf of Citigroup Inc. ("Citigroup" or the "Company") against Citigroup's Board of Directors (the "Board") and certain of the Citigroup's current and former executive officers and directors for their violations of the Securities and Exchange Act of 1934 (the "Exchange Act"), breaches of fiduciary duty, and unjust enrichment in connection with the award of excessive and unjustified 2011 executive compensation.

2.      The Board repeatedly represented that its executive compensation practices were rooted in a pay-for-performance policy that was dependent upon Company performance and enhancing stockholder value.  For example, in the Company's Proxy Statement on Form DEF 14A filed with the U.S. Securities and Exchange Commission ("SEC") on March 8, 2012 (the "Proxy Statement"), defendants Richard D. Parsons ("Parsons"), Michael E. O'Neill ("O'Neill"), Judith Rodin ("Rodin"), Lawrence Ricciardi ("Ricciardi"), Anothony M. Santomero ("Santomero"), Robert L. Ryan ("Ryan"), William S. Thompson, Jr. ("Thompson"), Robert L. Joss ("Joss"), Diana L. Taylor ("Taylor"), Ernesto Zedillo Ponce de Leon ("Zedillo Ponce de Leon"), Alain J.P. Belda ("Belda"), and Timothy C. Collins ("Collins") claimed that the Company's executive compensation policy is designed to achieve "the long-term best interests of stockholders…." Additionally, these same defendants claimed that the Company's executive compensation policy is focused on "enhanc[ing] stockholder value."  They also stated that the Board determined the amount of the executive compensation based on "[o]verall company performance."  These representations were materially false and misleading, as the Board did not follow any such pay-for-performance policy, and instead showered the Company's top executives with unprecedented pay hikes despite poor financial results by the Company.

3.      The excessive 2011 executive compensation and unprecedented pay hikes, despite Citigroup's $8.25 billion one-year decline in revenue, was approved by the Board and

unanimously recommended for shareholder approval by defendants Parsons, O'Neill, Rodin, Ricciardi, Santomero, Ryan, Thompson, Joss, Taylor, Zedillo Ponce de Leon, Belda, and Collins. Nevertheless, on April 17, 2012, a majority (approximately 55%) of voting Citigroup shareholders rejected the Company's excessive compensation for its Chief Executive Officer ("CEO") and executives for 2011.  Importantly, Citigroup is only one of a handful of U.S. companies to fail to receive majority support for its executive compensation under the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 ("Dodd-Frank Act") "say-on-pay" law.

4.      The Board's decisions to increase CEO and top executive pay in 2011, despite the Company's severely impaired financial results, were disloyal, irrational, and unreasonable, and not the product of good faith and prudence.  Instead, the Board's executive pay hikes violated its own pay-for-performance policy and, as intended, favored the interests of Citigroup's CEO and top executives at the expense of the Company and its shareholders.

5.      The Board is not entitled to business judgment protection for its 2011 executive pay hikes.  As evidenced by the adverse April 17, 2012 advisory say-on-pay vote, Citigroup shareholders, in their independent business judgment, concluded that the 2011 executive compensation was not in their best interests as Citigroup's shareholders. Under the business judgment rule, evidence that an executive pay decision is not in the shareholders' best interests is direct evidence that the Board did not act in the shareholders' best interests when approving it. The facts here rebut the presumption that the Board's 2011 executive pay decisions were valid and shift the burden of proof to defendants to demonstrate that the 2011 executive compensation was independent, made in good faith, and in the best interests of Citigroup's shareholders.

6.      Moreover, despite the vociferous reaction by shareholders, the Board has not publicly rescinded or otherwise modified the unlawful 2011 executive compensation. By this

action, plaintiff seeks relief for Citigroup as a result of the Board's breach of loyalty and its CEO

and top executives' unjust enrichment.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction in this case arising under Article III of the United

States Constitution and 28 U.S.C. §1331 because of claims arising under sections 14(a) and 20(a)

of the Exchange Act.  This Court also has supplemental jurisdiction pursuant to 28 U.S.C.

§1367(a) over all other claims that are so related to claims in the action within such original

jurisdiction that they form part of the same case or controversy under Article III of the United

States Constitution.

8.      This Court has jurisdiction over each defendant named herein because each

defendant is either a corporation that conducts business in and maintains operations in this

District, or is an individual who has sufficient minimum contacts with this District to render the

exercise of jurisdiction by the District courts permissible under traditional notions of fair play

and substantial justice.

9.      Venue is proper in this Court in accordance with 28 U.S.C. §1391(a) because: (i)

Citigroup maintains its principal place of business in this District; (ii) one or more of the

defendants either resides in or maintains executive offices in this District; (iii) a substantial

portion of the transactions and wrongs complained of herein, including the defendants' primary

participation in the wrongful acts detailed herein, and aiding and abetting and conspiracy in

violation of fiduciary duties owed to Citigroup, occurred in this District; and (iv) defendants

have received substantial compensation in this District by doing business here and engaging in

numerous activities that had an effect in this District.

## THE PARTIES

**Plaintiff**

10.     Plaintiff James Kenney was a shareholder of Citigroup at the time of the wrongdoing complained of, has continuously been a shareholder since that time, and is a current Citigroup shareholder.  Plaintiff voted against the Board-recommended exorbitant pay package.

**Nominal Defendant**

11.     Nominal defendant Citigroup is a Delaware corporation with principal executive offices located at 399 Park Avenue, New York, New York.  Citigroup is named in this Complaint as a nominal defendant solely in a derivative capacity, and this shareholder derivative action is on its behalf.  Citigroup is a global diversified financial services holding company that provides a range of financial products and services to consumers, corporations, governments, and institutions.  Citigroup's business is currently divided into two primary segments: Citicorp, which consists of Citi's Global Consumer Banking businesses and Institutional Clients Group; and Citi Holdings, which consists of Brokerage and Asset Management, Local Consumer Lending, and Special Asset Pool.

**Defendants**

12.     Defendant Vikram S. Pandit ("Pandit") is Citigroup's CEO and a director and has been since December 2007.  Pandit was also Chairman and CEO of Citigroup's Institutional Clients Group from at least November 2007 to December 2007 and Chairman of Citi Alternative Investments in at least 2007.  Pandit breached his fiduciary duty of loyalty by unjustly enriching himself with an excessive and unwarranted 2011 executive compensation that violated the Company's purported policies and was contrary to the Company's best interests.  Citigroup paid Pandit the following compensation as an executive:

| Year | Salary | Bonus | Option Awards | All Other Compensation | Total | Percent Increase |
|------|--------|-------|---------------|------------------------|-------|------------------|
| 2011 | $1,671,370 | $5,331,452 | $7,839,581 | $14,700 | $14,857,103 | 1485710200% |

- 4 -

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 2010 | $1 | - | - | - | $1 | - |

13.     Defendant John C. Gerspach ("Gerspach") is Citigroup's Chief Financial Officer ("CFO") and has been since July 2009.  Gerspach was also Citigroup's Controller and Chief Accounting Officer from March 2005 to July 2009; CFO of Citi Latin America from July 2003 to March 2005; Chief Administrative Officer of Citi Latin America from April 2002 to March 2005; Chief Administrative Officer of Citigroup e-Business from February 2000 to April 2002; and held various other positions at Citigroup from 1990.  Gerspach breached his fiduciary duty of loyalty by unjustly enriching himself with an excessive and unwarranted 2011 executive compensation that violated the Company's purported policies and was contrary to the Company's best interests.  Citigroup paid Gerspach the following compensation as an executive:

| Year | Salary | Bonus | Stock Awards | Option Awards | Change in Pension Values | All Other Compensation | Total | Percent Increase |
|---|---|---|---|---|---|---|---|---|
| 2011 | $500,000 | $2,200,000 | $2,333,333 | $2,039,836 | $73,047 | $14,700 | $7,160,916 | 51% |
| 2010 | $500,000 | - | $4,166,667 | - | $51,995 | $9,800 | $4,728,462 | - |

14.     Defendant John P. Havens ("Havens") is Citigroup's President and Chief Operating Officer and has been since January 2011; CEO of Citigroup's Institutional Clients Group and has been since March 2008; and Chairman of Citi Alternative Investments and has been since December 2007.  Havens was also CEO of Citi Alternative Investments from December 2007 to January 2011. Havens breached his fiduciary duty of loyalty by unjustly enriching himself with an excessive and unwarranted 2011 executive compensation that violated the Company's purported policies and was contrary to the Company's best interests.  Citigroup paid Havens the following compensation as an executive:

| Year | Salary | Bonus | Stock Awards | Option Awards | All Other Compensation | Total | Percent Increase |
|---|---|---|---|---|---|---|---|
| 2011 | $500,000 | $5,000,000 | $4,750,000 | $2,719,781 | $14,700 | $12,984,481 | 37% |
| 2010 | $500,000 | - | $9,000,000 | - | $9,800 | $9,509,800 | - |

15.     Defendant Manuel Medina-Mora ("Medina-Mora") is Citigroup's CEO of Global Consumer Banking and has been since November 2011; Chairman of Citigroup's Global Consumer Council and has been since November 2010; and Chairman of Citi Latin America and Mexico and has been since 2004.  Medina-Mora was also CEO of Citi Consumer Banking for the Americas from January 2010 to November 2011 and CEO of Citi Latin America and Mexico from 2004 to November 2011. Medina-Mora breached his fiduciary duty of loyalty by unjustly enriching himself with an excessive and unwarranted 2011 executive compensation that violated the Company's purported policies and was contrary to the Company's best interests.  Citigroup paid Medina-Mora the following compensation as an executive:

| Year | Salary | Bonus | Stock Awards | Option Awards | Change in Pension Values | Total | Percent Increase |
|------|--------|-------|--------------|---------------|--------------------------|-------|------------------|
| 2011 | $546,966 | $4,181,214 | $3,998,939 | $2,719,781 | - | $11,446,900 | 13% |
| 2010 | $546,966 | - | $7,450,911 | - | $2,119,018 | $10,116,895 | - |

16.     Defendant Brian Leach ("Leach") is Citigroup's Chief Risk Officer and has been since March 2008.  Leach breached his fiduciary duty of loyalty by unjustly enriching himself with an excessive and unwarranted 2011 executive compensation that violated the Company's purported policies and was contrary to the Company's best interests.  Citigroup paid Leach the following compensation as an executive:

| Year | Salary | Bonus | Stock Awards | Option Awards | Total |
|------|--------|-------|--------------|---------------|-------|
| 2011 | $500,000 | $3,400,000 | $5,400,00 | $2,039,836 | $11,354,536 |

17.     Defendant O'Neill is a Citigroup's Chairman of the Board and has been since April 2012 and a director and has been since April 2009.  O'Neill is also Chairman of Citigroup's Personnel and Compensation Committee (the "Compensation Committee") and has been since at least April 2012 and a member of that committee and has been since at least March 2012. O'Neill knowingly or recklessly decided to increase CEO and top executive pay in 2011, despite

the Company's severely impaired financial results.  Moreover O'Neill at least negligently, made or caused false and misleading statements in the Proxy Statement that perpetuated certain of the Individual Defendants' unjust enrichment.

18.     Defendant Rodin is a Citigroup director and has been since September 2004. Rodin knowingly or recklessly decided to increase CEO and top executive pay in 2011, despite the Company's severely impaired financial results.  Moreover Rodin at least negligently, made or caused false and misleading statements in the Proxy Statement that perpetuated certain of the Individual Defendants' unjust enrichment.

19.     Defendant Ryan is a Citigroup director and has been since July 2007.  Ryan knowingly or recklessly decided to increase CEO and top executive pay in 2011, despite the Company's severely impaired financial results.  Moreover Ryan at least negligently, made or caused false and misleading statements in the Proxy Statement that perpetuated certain of the Individual Defendants' unjust enrichment.

20.     Defendant Ricciardi is a Citigroup director and has been since July 2008. Ricciardi knowingly or recklessly decided to increase CEO and top executive pay in 2011, despite the Company's severely impaired financial results.   Moreover Ricciardi at least negligently, made or caused false and misleading statements in the Proxy Statement that perpetuated certain of the Individual Defendants' unjust enrichment.

21.     Defendant Santomero is a Citigroup director and has been since April 2009. Santomero was also a member of Citigroup's Compensation Committee in at least March 2011. Santomero knowingly or recklessly decided to increase CEO and top executive pay in 2011, despite the Company's severely impaired financial results.   Moreover Santomero at least negligently, made or caused false and misleading statements in the Proxy Statement that perpetuated certain of the Individual Defendants' unjust enrichment.

22.     Defendant Thompson, Jr. is a Citigroup director and has been since April 2009. Thompson is also a member of Citigroup's Compensation Committee and has been since April 2009.  Thompson knowingly or recklessly decided to increase CEO and top executive pay in 2011, despite the Company's severely impaired financial results.  Moreover Thompson at least negligently, made or caused false and misleading statements in the Proxy Statement that perpetuated certain of the Individual Defendants' unjust enrichment.

23.     Defendant Joss is a Citigroup director and has been since July 2009.  Joss knowingly or recklessly decided to increase CEO and top executive pay in 2011, despite the Company's severely impaired financial results.  Moreover Joss at least negligently, made or caused false and misleading statements in the Proxy Statement that perpetuated certain of the Individual Defendants' unjust enrichment.

24.     Defendant Taylor is a Citigroup director and has been since July 2009.  Taylor is also a member of Citigroup's Compensation Committee and has been since at least March 2011. Taylor knowingly or recklessly decided to increase CEO and top executive pay in 2011, despite the Company's severely impaired financial results.  Moreover Taylor at least negligently, made or caused false and misleading statements in the Proxy Statement that perpetuated certain of the Individual Defendants' unjust enrichment.

25.     Defendant Zedillo Ponce de Leon is a Citigroup director and has been since April 2010.  Zedillo Ponce de Leon is also a member of Citigroup's Compensation Committee and has been since at least April 2012.  Zedillo Ponce de Leon knowingly or recklessly decided to increase CEO and top executive pay in 2011, despite the Company's severely impaired financial results.  Moreover Zedillo Ponce de Leon at least negligently, made or caused false and misleading statements in the Proxy Statement that perpetuated certain of the Individual Defendants' unjust enrichment.

26.     Defendant Parsons was Citigroup's Chairman of the Board from January 2009 to April 2012 and a director from 1996 to April 2012.  Parsons was also a member of Citigroup's Compensation Committee from at least March 2010 to at least March 2012.  Parsons knowingly or recklessly decided to increase CEO and top executive pay in 2011, despite the Company's severely impaired financial results.  Moreover Parsons at least negligently, made or caused false and misleading statements in the Proxy Statement that perpetuated certain of the Individual Defendants' unjust enrichment.

27.     Defendant Belda was a Citigroup director from October 1998 to April 2012.  Belda was also Chairman of Citigroup's Compensation Committee from at least March 2010 to at least March 2012.  Belda knowingly or recklessly decided to increase CEO and top executive pay in 2011, despite the Company's severely impaired financial results.  Moreover Belda at least negligently, made or caused false and misleading statements in the Proxy Statement that perpetuated certain of the Individual Defendants' unjust enrichment.

28.     Defendant Collins was a Citigroup director from July 2009 to April 2012.  Collins knowingly or recklessly decided to increase CEO and top executive pay in 2011, despite the Company's severely impaired financial results.  Moreover Collins at least negligently, made or caused false and misleading statements in the Proxy Statement that perpetuated certain of the Individual Defendants' unjust enrichment.

29.     The defendants identified in ¶¶12, 17-28 are referred to herein as the "Director Defendants."   The defendants identified in  ¶¶17, 21-27 are referred to herein as the "Compensation Committee Defendants."  Collectively, the defendants identified in ¶¶12-28 are referred to herein as the "Individual Defendants."

## DUTIES OF THE INDIVIDUAL DEFENDANTS

**Fiduciary Duties**

30.     By reason of their positions as officers, directors, and/or fiduciaries of Citigroup and because of their ability to control the business and corporate affairs of Citigroup, the Individual Defendants owed and owe Citigroup and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage Citigroup in a fair, just, honest, and equitable manner.   The Individual Defendants were and are required to act in furtherance of the best interests of Citigroup and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.

31.     Each officer and director of the Company owes to Citigroup and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.   In addition, the Individual Defendants are also required to disclose fully and fairly all material information within their control when they seek shareholder action.

**Additional Duties of the Compensation Committee Defendants**

32.     In addition to these duties, the Compensation Committee Defendants O'Neill, Santomero, Taylor, Thompson, Zedillo Ponce de Leon, Parsons, and Belda owed specific duties to Citigroup to review and approve corporate goals and objectives relevant to CEO compensation and evaluate the CEO's performance in light of these goals and objectives.   Moreover, the Compensation Committee Defendants had a duty to "[r]eview and, if appropriate, recommend to the Board that it approve compensation-related proposals to be voted upon by stockholders." Importantly, the Compensation Committee Defendants had to fulfill their duties according to the guidance provided by the Dodd-Frank Act.   Pursuant to the Company's Compensation

Committee charter, O'Neill, Santomero, Taylor, Thompson, Zedillo Ponce de Leon, Parsons, and

Belda were specifically obligated to:

- ***Annually review and approve corporate goals and objectives relevant to CEO compensation, evaluate the CEO's performance in light of these goals and objectives, and provide a report thereon to the Board***.

- ***Annually review and determine, reflecting the advice of an independent compensation consultant, base salary, incentive compensation and long-term compensation for the CEO***, and report the Committee's determination to the Board. In determining long term incentive compensation of the CEO, the Committee may consider, among other factors, the Company's performance, the individual's performance, the value of similar incentive awards to individuals at the CEO position at comparable companies, and the quality of the Company's risk management policies and practices.

    * * *

- Annually review and approve, reflecting as needed the advice of an independent compensation consultant and other advisors, base salary, incentive compensation and long-term incentive compensation for members of the Operating Committee.

    * * *

- Review executive officer compensation for compliance with Section 16 of the Securities Exchange Act and Section 162(m) of the Internal Revenue Code, if applicable;-and, if appropriate, any other applicable laws, rules and regulations.

    * * *

- ***Fulfill the Committee's duties and responsibilities related to the compensation of executives and other employees under applicable legal authority or regulatory guidance, including such action to limit risks relating to incentive-based compensation as the Committee deems necessary under the Dodd-Frank Wall Street Reform and Consumer Protection Act and any regulations or guidance promulgated thereunder***.

    * * *

- ***Review and, if appropriate, recommend to the Board that it approve compensation-related proposals to be voted upon by stockholders***.

**Control, Access, and Authority**

33.     The Individual Defendants, because of their positions of control and authority as officers and/or directors of Citigroup, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company.

34.     At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of Citigroup, and was at all times acting within the course and scope of such agency.

**Reasonable and Prudent Supervision**

35.     To discharge their duties, the officers and directors of Citigroup were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the financial affairs of the Company.  By virtue of such duties, the officers and directors of Citigroup were required to, among other things:

(a)     ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the investing public;

(b)     conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock; and

(c)     ensure that the Company was operated in a diligent, honest, and prudent manner in compliance with all applicable laws, rules, and regulations.

**Breaches of Duties**

36.     Each Individual Defendant, by virtue of his or her position as an officer and/or director, owed to the Company and to its shareholders the fiduciary duty of loyalty and good

faith and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as officers and directors of Citigroup, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company. The conduct of the Individual Defendants who were also officers and/or directors of the Company have been ratified by the remaining Individual Defendants who collectively comprised all of Citigroup's Board.

37.     Because of their executive and directorial positions with Citigroup, the Individual Defendants knew or should have known that by increasing 2011 executive compensation following the plummeting value of Citigroup's stock and significantly decreased revenues, they were breaching their fiduciary duties of candor, good faith, loyalty, and reasonableness owed to Citigroup, as well as unjustly enriching certain of the Company's senior officers. The Individual Defendants also knew or should have known that by unanimously recommending shareholder approval of the 2011 executive compensation in the Proxy Statement, they were breaching their fiduciary duty of candor and violating the Board's purported pay-for-performance executive compensation policy. There is doubt that those decisions were presumptively protected business judgments, and that the Board acted loyally in making these business judgments.

38.     Because of their executive and directorial positions with Citigroup, the Individual Defendants also knew or should have known that the Proxy Statements' (and other SEC filings') repeated representations that the Board only pays for performance were improper. By causing such statements to be made, the Individual Defendants were breaching their fiduciary duties of loyalty, good faith, candor, and independence owed to Citigroup and its shareholders, and these

- 13 -

actions do not qualify for protection under the business judgment rule.  The 2011 executive compensation increases were inconsistent with the Board's stated pay for performance policy, and the Individual Defendants' repeated statements to the contrary were designed to and did conceal the fact that the Board was overpaying the Company's executive officers via compensation plans premised on an illusory pay-for-performance policy.

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

39.     In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their common plan or design.  In addition to the wrongful conduct herein alleged as giving rise to primary liability, the Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

40.     The Individual Defendants engaged in a conspiracy, common enterprise, and/or common course of conduct.  During this time, the Individual Defendants caused the Company to increase 2011 executive compensation following the plummeting value of Citigroup's stock and significantly decreased revenues.  In addition, the Individual Defendants caused the Company to issue the false and misleading Proxy Statement.

41.     The purpose and effect of the Individual Defendants' conspiracy, common enterprise, and/or common course of conduct was, among other things, to disguise the Individual Defendants' violations of law, breaches of fiduciary duty, waste of corporate assets, and unjust enrichment.

42.     The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company to purposefully or recklessly release improper statements.  Because the actions described herein occurred under the authority of the

- 14 -

Board, each of the Individual Defendants was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

43.     Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein.  In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Individual Defendant acted with knowledge of the primary wrongdoing, substantially assisted in the accomplishment of that wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing.

## SUBSTANTIVE ALLEGATIONS

**The Board's "Pay-for-Performance" Executive Policy**

44.     The Board represented to Citigroup shareholders that the Company's executive compensation practices are firmly rooted in a pay-for-performance philosophy.  In the Proxy Statement, defendants Parsons, O'Neill, Rodin, Ricciardi, Santomero, Ryan, Thompson, Joss, Taylor, Zedillo Ponce de Leon, Belda, and Collins claimed that the Company's executive compensation policy is designed to achieve "***the long-term best interests of stockholders....***" Additionally, Parsons, O'Neill, Rodin, Ricciardi, Santomero, Ryan, Thompson, Joss, Taylor, Zedillo Ponce de Leon, Belda, and Collins claimed that the Company's executive compensation policy is contingent upon "enhanc[ing] stockholder value." Further, Parsons, O'Neill, Rodin, Ricciardi, Santomero, Ryan, Thompson, Joss, Taylor, Zedillo Ponce de Leon, Belda, and Collins claimed in the Proxy Statement that in determining the amount of the executive compensation awards, the Board valued "[o]verall company performance."

45.     In other words, defendants Parsons, O'Neill, Rodin, Ricciardi, Santomero, Ryan, Thompson, Joss, Taylor, Zedillo Ponce de Leon, Belda, and Collins represented that the Company's executives should receive enhanced compensation only if they advance short-term

and long-term performance for Citigroup and its stockholders, and they should receive less compensation when they do not.  Despite Parsons, O'Neill, Rodin, Ricciardi, Santomero, Ryan, Thompson, Joss, Taylor, Zedillo Ponce de Leon, Belda, and Collins' public statements, however, the Individual Defendants did the exact opposite.

**Citigroup's Atrocious 2011 Financial Results**

46.     In 2011, the relationship between executive compensation and corporate performance was virtually non-existent.  For example, for 2011, Citigroup's revenues decreased by almost 10% to $78.35 billion from $86.6 billion in 2010.  Perhaps most strikingly, Citigroup stock value plummeted.  On December 31, 2010, Citigroup stock closed at $47.30 per share.[1] On December 30, 2011, however, Citigroup stock closed at $26.31 per share, representing a one-year decline *of over 44%*.  During the same time period, the Dow Jones Industrial Average grew by over 5%.  Moreover, in March 2012, the U.S. Federal Reserve refused Citigroup's request for a share buyback or dividend, following "stress tests" to see how the Company would perform in a severe financial downturn.   The material declines in Citigroup's business and financial



---

[1] This Complaint takes into account Citigroup's 1-for-10 reverse stock split that occurred on or about May 6, 2011.

performance are set forth graphically below:



47.     The Individual Defendants were not mere spectators to Citigroup's 2011 financial decline.  On the contrary, defendants were at all relevant times responsible for the management and oversight of Citigroup's business and affairs.  Throughout 2011, Citigroup's officers and directors regularly communicated with one another about Citigroup's financial performance and made decisions that directly and indirectly impacted the Company's 2011 financial results.  As a result, the Board was a percipient witness to not only Citigroup's 2011 financial decline but also to the significant underperformance of Citigroup's CEO and top executives.

**Excessive 2011 Executive Compensation**

48.     Notwithstanding Citigroup's disastrous 2011 results, Citigroup's executive compensation for the period still dramatically increased.  For 2011, Citigroup's five highest-paid officers - defendants Pandit, Gerspach, Havens, Leach and Medina-Mora collectively received *$54 million* in executive compensation.

49.     Notwithstanding Citigroup's dismal 2011 financial performance, the Board approved each of the excessive 2011 pay hikes, which are set forth graphically below:



**Citigroup Shareholders Reject the Board's Business Judgment**

50.     In the Proxy Statement on March 8, 2012, defendants Parsons, O'Neill, Rodin, Ricciardi, Santomero, Ryan, Thompson, Joss, Taylor, Zedillo Ponce de Leon, Belda, and Collins recommended shareholder approval of the Company's 2011 executive compensation, stating:

> The board recommends that you vote *for* advisory approval of the foregoing resolution approving [Citigroup's] executive compensation as disclosed in the Compensation Discussion and Analysis, the compensation tables and any related materials contained in this proxy statement.

51.     Citigroup's shareholder base consists primarily of sophisticated institutional investors who own millions of Citigroup shares worth tens of millions of dollars.  These types of sophisticated shareholders possess the experience, expertise, and resources to assess, in their own independent business judgment, whether executive compensation is in their best interests as shareholders.  And, as discussed below, they did precisely that in connection with Citigroup's advisory say-on-pay executive compensation vote.

52.     On March 8, 2012, a "say-on-pay" vote was conducted via the Proxy Statement, whereby Citigroup shareholders were given the chance to voice their dissatisfaction with the

Board's disregard for their interests, the Board's own prior statements regarding its pay for performance compensation policy, and the Board's apparent refusal to acknowledge the Company's poor performance in determining executive compensation for 2011. The Company's stockholders were thus afforded the opportunity to vote on whether, as the Board claimed, the interests of Citigroup's executive officers were in fact aligned with those of long-term shareholders.

53.     In late 2010, Congress enacted the Dodd-Frank Act say-on-pay advisory shareholder vote. According to a Senate Banking Report, the purpose of the Dodd-Frank Act's say-on-pay vote is to provide an efficient means for shareholders, as the owners of a corporation, to collectively express whether the corporation's executive compensation is in their best interests as shareholders.

54.     Shareholders have almost uniformly supported companies' pay programs, and they have done so by overwhelming margins. Indeed, of the 1,873 companies that reported voting results as of May 27, 2011, more than two-thirds of those companies received 90% support or more from their voting shareholders. As of April 17, 2012, 175 companies had held say on pay votes in the calendar year, and 90.4% were approved.

55.     Although non-binding, the vote tests whether the corporation's executive pay is in the shareholders' best interests. Here, Citigroup shareholders concluded that the 2011 executive compensation was not. Specifically, despite defendants Parsons, O'Neill, Rodin, Ricciardi, Santomero, Ryan, Thompson, Joss, Taylor, Zedillo Ponce de Leon, Belda, and Collins' unanimous recommendation that shareholders approve the 2011 executive compensation, on April 17, 2012, a majority (55%) of Citigroup's voting shareholders resoundingly *rejected* the Board's business judgment and its 2011 executive compensation decision.

56.     The result of Citigroup's say-on-pay vote is direct and probative evidence that the 2011 executive compensation was not in the best interests of Citigroup shareholders, and correspondingly that the Board did not act in the best interests of Citigroup shareholders when approving it.  Directors who fail to act in furtherance of the shareholders' best interests breach their unremitting duty to loyalty.  Consequently, Citigroup's adverse say-on-pay vote is direct and probative evidence rebutting the presumption that the Board's 2011 executive pay decisions were in the best interests of Citigroup shareholders and shifts the burden of proof to defendants to prove that the 2011 executive compensation was independent, made in good faith, and in the best interests of Citigroup shareholders.

## THE MATERIALLY FALSE AND MISLEADING PROXY STATEMENT

57.     Defendants Parsons, O'Neill, Rodin, Ricciardi, Santomero, Ryan, Thompson, Joss, Taylor, Zedillo Ponce de Leon, Belda, and Collins caused Citigroup to disseminate to shareholders the Proxy Statement in connection with the Company's annual shareholder meeting. Parsons, O'Neill, Rodin, Ricciardi, Santomero, Ryan, Thompson, Joss, Taylor, Zedillo Ponce de Leon, Belda, and Collins drafted, approved, reviewed, and/or signed the Proxy Statement before it was filed with the SEC and disseminated to Citigroup shareholders.  Parsons, O'Neill, Rodin, Ricciardi, Santomero, Ryan, Thompson, Joss, Taylor, Zedillo Ponce de Leon, Belda, and Collins were at least negligent in not knowing that the Proxy Statement was materially false and misleading.

58.     In the Proxy Statement, defendants Parsons, O'Neill, Rodin, Ricciardi, Santomero, Ryan, Thompson, Joss, Taylor, Zedillo Ponce de Leon, Belda, and Collins claimed that the Company's executive compensation practices aligned management/stockholder interests because the Board paid-for-performance and the Company's executives would receive enhanced compensation only if they achieved increases in Company performance, which benefitted the

"long-term best interests of stockholders." Despite this representation, even though the Company's stock price and revenues materially declined, Parsons, O'Neill, Rodin, Ricciardi, Santomero, Ryan, Thompson, Joss, Taylor, Zedillo Ponce de Leon, Belda, and Collins still awarded the enhanced executive compensation, in direct contravention of their previously stated "pay-for-performance" policy.

59.    The Proxy Statement was false and misleading because as opposed to paying for performance, the Board paid for under-performance.  Defendants Parsons, O'Neill, Rodin, Ricciardi, Santomero, Ryan, Thompson, Joss, Taylor, Zedillo Ponce de Leon, Belda, and Collins' statements in the Proxy Statement were false and misleading, because even though the Company's stock price and revenues fell dramatically in 2011, and the value of the Company's stock had plummeted by 95% over the past five years, defendant Pandit received a substantial pay hike.  Accordingly, the Proxy Statement contained the false and misleading statements that the Board allegedly paid-for-performance.

## DAMAGES TO CITIGROUP

60.    Citigroup has been seriously injured by the Board's excessive 2011 CEO and top executive compensation.  During 2011, the Company's stock price plummeted and revenues dramatically decreased.  Yet, incredibly, executive compensation for the Company's CEO skyrocketed, in direct violation of the Board's purported "pay for performance" compensation policy.  The Board has not altered or amended the 2011 compensation even in the face of the shareholder's vociferous reaction.  As a result, the Citigroup executives who received the excessive 2011 compensation have been unjustly enriched.  In addition to the excessive compensation paid to these undeserving fiduciaries, the Individual Defendants' actions have damaged Citigroup's corporate image and goodwill with its business partners, regulators, and shareholders.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

61.    Plaintiff brings this action derivatively in the right and for the benefit of Citigroup to redress injuries suffered, and to be suffered, by Citigroup as a direct result of violations of law, breach of fiduciary duties, and unjust enrichment, as well as the aiding and abetting thereof, by the Individual Defendants.  Citigroup is named as a nominal defendant solely in a derivative capacity.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

62.    Plaintiff will adequately and fairly represent the interests of Citigroup in enforcing and prosecuting its rights.

63.    Plaintiff was a shareholder of Citigroup at the time of the wrongdoing complained of, has continuously been a shareholder since that time, and is a current Citigroup shareholder.

64.    The current Board of Citigroup consists of the following twelve individuals: defendants Joss, O'Neill, Pandit, Ricciardi, Rodin, Ryan, Santomero, Taylor, Thompson and Zedillo Ponce de Leon, and non-defendants Franz B. Humer and Joan E. Spero.  Plaintiff has not made any demand on the present Board to institute this action because such a demand would be a futile, wasteful, and useless act, as set forth below.

**Demand Is Excused Because the Director Defendants' Conduct Is Not a Valid Exercise of Business Judgment**

65.    The Board's decision to issue the 2011 executive compensation was not a protected business judgment, and thus, a demand is excused.  The Board claimed that its executive compensation practices aligned management/stockholder interests because it paid-for-performance and the Company's executives would receive enhanced compensation only if they achieved increases in the Company's performance, which benefitted the "long-term best interests of stockholders."  Based on these representations (among others), a majority of the Company's stockholders rejected the Board's 2011 executive compensation recommendation.  These

undisputed facts raise doubt that the Board's 2011 compensation decision was a protected business judgment. Thus, demand is excused.

66.     Defendants O'Neill, Rodin, Ricciardi, Santomero, Ryan, Thompson, Joss, Taylor, and Zedillo Ponce de Leon's decision to issue false and misleading statements regarding its purported "pay-for-performance" policy was not a protected business judgment, which excuses demand. In particular, the Board claimed that its executive compensation practices aligned management/stockholder interests because it paid-for-performance and the Company's executives would receive enhanced compensation only if they achieved increases in Company performance, which benefitted the "long-term best interests of stockholders." Despite these representations, even though the Company's stock price and revenues materially declined, the Board still awarded the enhanced executive compensation, in direct contravention of their previously stated "pay-for-performance" policy. O'Neill, Rodin, Ricciardi, Santomero, Ryan, Thompson, Joss, Taylor, and Zedillo Ponce de Leon's false and misleading statements raise doubt that they are entitled to the protections of the business judgment rule.  Thus, demand is excused.

**Demand Is Excused Because a Majority of the Current Board Faces a Substantial Likelihood of Liability for Their Misconduct**

67.     A majority of the Board, defendants Joss, O'Neill, Pandit, Ricciardi, Rodin, Ryan, Santomero, Taylor, Thompson and Zedillo Ponce de Leon, face a substantial likelihood that they will be held liable for their misconduct.  In particular, O'Neill, Rodin, Ricciardi, Santomero, Ryan, Thompson, Joss, Taylor, and Zedillo Ponce de Leon claimed that the Company's executive compensation practices aligned management/stockholder interests because it paid-for-performance and the Company's executives would receive enhanced compensation only if they achieved increases in Company performance, which benefitted the "long-term best interests of stockholders." Despite this representation, even though the Company's stock price and revenues

materially declined, Joss, O'Neill, Pandit, Ricciardi, Rodin, Ryan, Santomero, Taylor, Thompson and Zedillo Ponce de Leon still awarded the enhanced executive compensation, in direct contravention of their previously stated "pay-for-performance" policy.  Accordingly, the Board's false and misleading statements raise doubt that the entire Board complied with their fiduciary duties of loyalty and good faith. Because a majority of the Board faces a substantial likelihood of liability in connection with the issuance of false and misleading statements, demand is excused.

68.     In addition, on April 17, 2012, a majority (55%) of Citigroup's voting shareholders rejected the Board's recommendation, and did not approve the Company's pay package.  Yet, the Board has not altered or otherwise amended the 2011 executive compensation, nor indicated that it has any intention of doing so.  By first recommending that the Company's stockholders approve the excessive 2011 executive compensation, and then by failing to take any action whatsoever in the face of the adverse stockholder vote, the Board has openly demonstrated its hostility to this action and that a pre-suit demand upon it to take such action is a useless and futile act. Accordingly, demand is excused.

69.     Defendants O'Neill, Taylor, Santomero, Zedillo Ponce de Leon, and Thompson, as members of the Compensation Committee during the wrongdoing alleged herein, face a substantial likelihood of liability for their breaches of fiduciary duty.  Pursuant to the Company's Compensation Committee Charter, directors on the Compensation Committee are responsible for, inter alia, reviewing and setting executive compensation in conformity with the Board's pay for performance policy.  Defendants O'Neill, Taylor, Santomero, Zedillo Ponce de Leon, and Thompson breached their fiduciary duties of due care, loyalty, and good faith, because the Compensation Committee, inter alia, awarded the above-discussed 2011 executive compensation, which was wholly divorced from the Board's pay-for-performance criteria. Therefore, O'Neill, Taylor, Santomero, Zedillo Ponce de Leon, and Thompson (if not the entire

Board) each face a substantial likelihood of liability for their breach of fiduciary duties and any demand upon them is futile.

70.    The majority of the current Board is made up of the very same people who approved the pay hikes.  Moreover, the majority of the current Board did not merely approve the compensation, they also recommended to the shareholders that the shareholders approve the compensation.  Given that these Director Defendants devised the challenged compensation, approved the compensation, recommended shareholder approval of the compensation, and suffered a negative shareholder vote on the compensation, plaintiff has demonstrated sufficient facts to show there is reason to doubt these same directors could exercise their independent business judgment over whether to bring suit against themselves for breach of fiduciary duty in awarding the challenged compensation.  Plaintiff's allegations create a reasonable doubt that the challenged transaction is the result of a valid business judgment, and, accordingly, the directors possess a disqualifying interest sufficient to render pre-suit demand futile and, hence, unnecessary.

71.    Pre-suit demand on defendant Pandit is excused because he lacks the independence to adequately prosecute the wrongdoing alleged herein.  Pandit's principal professional occupation is his employment as CEO of Citigroup.  In addition, defendants have admitted in the Proxy Statement that Pandit is not independent.  Pandit has received and continues to receive substantial monetary compensation and other valuable benefits (including the excessive compensation complained of herein).  Thus, Pandit lacks independence, rendering him incapable of impartially considering a demand to commence and vigorously prosecute this action.  Moreover, as alleged herein, Pandit received excessive and unwarranted executive compensation in 2011, and, as a result, was the direct recipient of financial benefits from the

misconduct challenged herein that were not shared with Citigroup's stockholders.  Thus, Pandit is directly interested in a demand, and accordingly, pre-suit demand upon Pandit is excused.

72.    Pre-suit demand on defendant Joss is excused because Joss receives substantial monetary compensation from Citigroup for his role as a consultant to the Company, and as result, he too lacks the independence to adequately prosecute the wrongdoing alleged herein. Specifically, Joss receives $350,000, payable in quarterly arrears, to provide consulting services during 2012 to the Company and its subsidiaries and affiliates.  In addition, defendants have admitted in the Proxy Statement that Joss is not independent.  Thus, defendant Joss lacks independence, rendering him incapable of impartially considering a demand to commence and vigorously prosecute this action.

73.    The acts complained of constitute violations of the fiduciary duties owed by Citigroup's officers and directors and these acts are incapable of ratification.  Nevertheless, the Individual Defendants and current Board have not filed any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt to recover for Citigroup any part of the damages Citigroup suffered and will suffer thereby.

74.    Plaintiff has not made any demand on the other shareholders of Citigroup to institute this action since such demand would be a futile and useless act for at least the following reasons:

(a)    Citigroup is a publicly held company with over 2.93 billion shares outstanding and thousands of shareholders;

(b)    making demand on such a number of shareholders would be impossible for plaintiff who has no way of finding out the names, addresses, or phone numbers of shareholders; and

(c)      making demand on all shareholders would force plaintiff to incur excessive expenses, assuming all shareholders could be individually identified.

## COUNT I

### Against Defendants Parsons, O'Neill, Rodin, Ricciardi, Santomero, Ryan, Thompson, Joss, Taylor, Zedillo Ponce de Leon, Belda, and Collins for Violations of Section 14(a) of the Exchange Act

75.      Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

76.      Defendants Parsons, O'Neill, Rodin, Ricciardi, Santomero, Ryan, Thompson, Joss, Taylor, Zedillo Ponce de Leon, Belda, and Collins at least negligently caused to be issued, and participated in the issuance of materially false and misleading statements to shareholders that were contained in the Company's Proxy Statement.  These statements were in connection with compensation-related proposals that the Citigroup's shareholders voted on.

77.      The Proxy Statement was false and misleading when issued because it falsely stated that the Board's pay-for-performance policy was designed to achieve "the long-term best interests of stockholders" and that the Company's compensation policies aim to "enhance stockholder value." The Proxy Statement stated that in determining the amount of the executive compensation awards, the Board likewise considered "[o]verall company performance."

78.      These statements were false and misleading because, as described, *supra*, in 2011, Citigroup's revenues declined by almost 10% to $78.35 billion from $86.6 billion in 2010, and Citigroup stock likewise suffered enormous erosion in value of over 44% during 2011.  Further, over the past five years, Citigroup shares have lost almost 95% of their value, which is not in "the long-term best interests of stockholders."

79.      In the exercise of reasonable care, defendants Parsons, O'Neill, Rodin, Ricciardi, Santomero, Ryan, Thompson, Joss, Taylor, Zedillo Ponce de Leon, Belda, and Collins should

- 27 -

have known that the statements contained in the Proxy Statement were materially false and misleading.

80.    The misrepresentations and omissions in the Proxy Statement were material to shareholders in voting on the Proxy Statement. The Proxy Statement was an essential link in the accomplishment of the continuation of the Individual Defendants' violation of the Company's compensation policies, as revelations of the truth would have immediately thwarted a continuation of shareholders' endorsement of the directors' positions, the executive officers' compensation, and the Company's compensation policies.

81.    The Company was damaged as a result of the Individual Defendants' material misrepresentations and omissions in the Proxy Statement.

## COUNT II

**Against Defendants Parsons, O'Neill, Rodin, Ricciardi, Santomero, Ryan, Thompson, Joss, Taylor, Zedillo Ponce de Leon, Belda, and Collins for Violations of Section 20(a) of the Exchange Act**

82.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

83.    Defendants Parsons, O'Neill, Rodin, Ricciardi, Santomero, Ryan, Thompson, Joss, Taylor, Zedillo Ponce de Leon, Belda, and Collins acted as controlling persons of Citigroup within the meaning of section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Citigroup, and by their participation in and/or awareness of the Company's operations and/or their intimate knowledge of the false statements contained in the Proxy Statements filed with the SEC, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various false and misleading statements or omissions.

84.     Defendants Parsons, O'Neill, Rodin, Ricciardi, Santomero, Ryan, Thompson, Joss, Taylor, Zedillo Ponce de Leon, Belda, and Collins were provided with or had unlimited access to the Proxy Statement containing the misleading statements or omissions prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

85.     In particular, defendants Parsons, O'Neill, Rodin, Ricciardi, Santomero, Ryan, Thompson, Joss, Taylor, Zedillo Ponce de Leon, Belda, and Collins had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, are presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

86.     By virtue of the foregoing, defendants Parsons, O'Neill, Rodin, Ricciardi, Santomero, Ryan, Thompson, Joss, Taylor, Zedillo Ponce de Leon, Belda, and Collins have violated section 20(a) of the Exchange Act.

87.     As set forth above, defendants Parsons, O'Neill, Rodin, Ricciardi, Santomero, Ryan, Thompson, Joss, Taylor, Zedillo Ponce de Leon, Belda, and Collins had the ability to exercise control over and did control a person or persons who have each violated section 14(a) of the Exchange Act by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Citigroup will be irreparably harmed.

### COUNT III

### Against the Individual Defendants for Breach of Fiduciary Duty

88.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

89.     The Individual Defendants owed and owe Citigroup fiduciary obligations.  By reason of their fiduciary relationships, the Individual Defendants owed and owe Citigroup the highest obligation of good faith, fair dealing, loyalty, and due care.

90.     As demonstrated by the allegations above, defendants Parsons, O'Neill, Rodin, Ricciardi, Santomero, Ryan, Thompson, Joss, Taylor, Zedillo Ponce de Leon, Belda, and Collins breached their fiduciary duties of loyalty, good faith, candor, and independence owed to Citigroup and its shareholders by failing to adhere to the Company's purported pay-for-performance policy. In particular, in the Proxy Statement, Parsons, O'Neill, Rodin, Ricciardi, Santomero, Ryan, Thompson, Joss, Taylor, Zedillo Ponce de Leon, Belda, and Collins claimed that the Company's executive compensation practices aligned management/stockholder interests because its paid-for-performance and the Company's executives would receive enhanced compensation only if they achieved increases in Company performance, which benefitted the "long term best interests of stockholders."  Despite this (and other) representations, even though the Company experienced plummeting revenue and stock value, the Board still increased executive compensation is in direct contravention of their previously stated pay-for-performance policy.  This increase in executive compensation is in direct contravention of the Board's stated pay-for-performance policy and is a breach of the Board's fiduciary duties.

91.     In addition, the Individual Defendants and each of them, violated and breached their fiduciary duties of candor, good faith, and loyalty by failing to disclose material information and/or made material misrepresentations to shareholders regarding Citigroup's 2011 executive compensation policy. At all relevant times, the Individual Defendants, collectively and individually, initiated a course of conduct which was designed to and did: (i) conceal the fact that the Company was overpaying its directors and officers via compensation plans premised on an illusory pay for performance executive compensation scheme; and (ii) maintain their directorial

and executive positions at Citigroup and the profits, power, and prestige which they enjoyed as a result of these positions.

92.     Finally, the Individual Defendants breached their fiduciary duties of loyalty, good faith, candor, and independence owed to Citigroup and its shareholders by failing to amend or alter the 2011 executive compensation in connection with the negative say-on-pay vote. In particular, despite having their executive compensation program rejected by a majority of voting shareholders, the Board has done nothing meaningful in response, in direct violation of their fiduciary duties.

93.     Compensation Committee Defendants O'Neill, Santomero, Taylor, Thompson, Zedillo Ponce de Leon, Parsons, and Belda breached their fiduciary duty of loyalty by approving the 2011 executive compensation, which was wholly divorced from the Board's pay-for-performance criteria.

94.     As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, Citigroup has sustained significant damages, as alleged herein.  As a result of the misconduct alleged herein, these defendants are liable to the Company.

95.     Plaintiff, on behalf of Citigroup, has no adequate remedy at law.

## COUNT IV

**Against Defendants Pandit, Gerspach, Havens, Medina-Mora, and Leach for Unjust Enrichment**

96.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

97.     By their wrongful acts and omissions, defendants Pandit, Gerspach, Havens, Medina-Mora, and Leach were unjustly enriched at the expense of and to the detriment of Citigroup.  As a result of the conduct described above, Pandit, Gerspach, Havens, Medina-Mora,

and Leach will be and have been unjustly enriched at the expense of Citigroup, in the form of unjustified salaries, benefits, stock option grants, and other emoluments of office.

98.     All the payments and benefits provided to defendants Pandit, Gerspach, Havens, Medina-Mora, and Leach based upon or related to the Individual Defendants' executive compensation scheme were unjustly awarded and were undertaken at the expense of Citigroup, resulting in substantially unearned benefits.

99.     Plaintiff, as a shareholder and representative of Citigroup, seeks restitution from these defendants, and each of them, and seeks an order of this Court disgorging all gains which they have and/or will unjustly obtain and/or a constructive trust should be imposed for the benefit of the Company.

100.     Plaintiff, on behalf of Citigroup, has no adequate remedy at law.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff, on behalf of Citigroup, demands judgment as follows:

A.     Against all of the defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the defendants' breaches of fiduciary duties and unjust enrichment;

B.     Directing Citigroup to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Citigroup and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote, resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote of the following corporate governance policies:

1.     a proposal to strengthen shareholder input into the Company's executive compensation payments;

2.     a proposal to strengthen Citigroup's oversight of its disclosure procedures;

3.     a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board; and

4.     a provision to permit the shareholders of Citigroup to nominate at least three candidates for election to the Board;

C.     Extraordinary equitable and/or injunctive relief as necessary or permitted by law, equity, and the statutory provisions sued hereunder, including disgorgement, attachment, impoundment, imposition of a constructive trust on, or otherwise restricting the disposition/exercise of improvidently awarded executive compensation based upon false financial reporting and/or the proceeds of Individual Defendants' trading activities or their other assets so as to ensure that plaintiff on behalf of Citigroup, has an effective remedy;

D.     Awarding to Citigroup restitution from defendants, and each of them, and ordering disgorgement of all profits, benefits, and other compensation obtained by the defendants;

E.     Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

F.     Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: May 1, 2012

LAW OFFICES OF CURTIS V. TRINKO

_Jennifer E. Traystman_

JENNIFER E. TRAYSTMAN

CURTIS V. TRINKO
EILEEN M. RYAN
16 West 46th Street, 7th Floor
New York, NY 10036
Telephone: (212) 490-9500
Facsimile: (212) 986-0158
E-mail: ctrinko@trinko.com

ROBBINS UMEDA LLP
BRIAN J. ROBBINS
FELIPE J. ARROYO
SHANE P. SANDERS
KEVIN S. KIM
600 B Street, Suite 1900
San Diego, CA 92101
Telephone:  (619) 525-3990
Facsimile:  (619) 525-3991
Email: brobbins@robbinsumeda.com
       farroyo@robbinsumeda.com
       ssanders@robbinsumeda.com
       kkim@robbinsumeda.com

Attorneys for Plaintiff

726276

- 34 -

<u>VERIFICATION</u>

I, James Kenney, hereby declare as follows:

I am the plaintiff in the within entitled action.  I have read the Verified Shareholder Derivative Complaint for Violations of the Securities and Exchange Act of 1934, Breach of Fiduciary Duties, and Unjust Enrichment.  Based upon discussions with and reliance upon my counsel, and as to those facts of which I have personal knowledge, the Complaint is true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Signed and Accepted:

Dated:  April 28, 2012

JAMES KENNEY